# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TIA T. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-7855 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| METROPOLITAN WATER ) | |
| RECLAMATION DISTRICT OF ) | |
| GREATER CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tia Taylor ("Plaintiff") brings this Title VII employment discrimination suit against her employer, the Metropolitan Water Reclamation District of Greater Chicago ("Defendant") based on allegations that Defendant discriminated against her on the basis of gender and color. See [1]. Currently before the Court are Defendant's motion to dismiss the complaint for failure to state a claim [15] and motion to dismiss the complaint for lack of prosecution [20]. For the reasons explained below, Defendant's motion to dismiss the complaint for lack of prosecution [20] is denied and Defendant's motion to dismiss for failure to state a claim [15] is granted in part and denied in part. Plaintiff's claims for discrimination based on color under Title VII and 42 U.S.C. § 1981 are dismissed. Plaintiff's Title VII claim for discrimination based on gender remains in the case. This matter is set for status hearing on February 7, 2017 at 9:00 a.m. The parties should come prepared to discuss deadlines for completing discovery.

## I. Background[1]

Plaintiff began working for Defendant in July 2009 at the Calumet Plant in Chicago. Her position was maintenance laborer. Plaintiff was part of a ten-person crew responsible for cleaning the plant. Plaintiff was the only member of the crew who was assigned duties both inside and outside the plant's administration building. Beginning in April 2010, the foreman of the crew was Hollee Davis ("Davis"). Plaintiff alleges that from the beginning of their relationship Davis expressed disdain for and made disparaging remarks to Plaintiff, such as, "you think you're so cute" or "aren't your pants too tight?" [1] at 20.

In September 2010, Plaintiff discovered that she was pregnant. In December 2010, she suffered hemorrhaging and was rushed to the hospital with heavy cramping and pain. When she returned to work, she submitted documentation requesting light duty. Davis did not respond to her request. After Plaintiff made several inquiries, Davis told Plaintiff that Defendant did not allow light duty for maintenance laborers and that, if Plaintiff could not complete the work assigned to her, she should not come to work. Plaintiff complained about this treatment to Davis' supervisor and her union representative, neither of whom took any action.

On January 4, 2011, Plaintiff was again hospitalized with hemorrhaging. Plaintiff called Davis and told Davis that she was in the hospital and did not know when her physician would release her to work. Plaintiff was released the following day, January 5, and advised by her physician to perform light duty only. Plaintiff called Davis and told her that she would not be reporting to work until her physician gave her authorization to do so. On January 14, Defendant provided Plaintiff with a written warning, even though Plaintiff had provided paperwork to

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pled allegations set forth in Plaintiff's complaint [1]. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).

support her absence, had enough accrued time (vacation, personal, and optional time) to cover the absence, and was entitled to leave under the Family and Medical Leave Act ("FMLA").

In March 2011, Plaintiff went on maternity leave. She applied for FMLA leave and was denied. Plaintiff learned that Davis had not properly signed her FMLA application, which resulted in it being denied. Plaintiff was forced to take leave on "ordinary disability." [1] at 22. Plaintiff had her baby in April by cesarean section. Plaintiff alleges that her baby was born a month early because of the extra work and stress that she had been exposed to while working for Defendant.

In June 2011, Plaintiff returned to work. Plaintiff was subjected to stressful working conditions and given work assignments that should have belonged to other members of her crew. According to Plaintiff, Davis continued to make lewd comments to and stare and roll her eyes at Plaintiff.

On May 30, 2012, Plaintiff came to work dressed better than she usually would, because it was her birthday. Davis told Plaintiff that her pants were not fit for work and that she would be sent home if she did not cover her outfit in a yellow plastic suit. Plaintiff donned the yellow plastic suit. Later that day, Davis told Plaintiff that she had received emails about another member of the crew not properly cleaning the scale houses and permanently reassigned the scale houses to Plaintiff. Pursuant to the governing union contract, Plaintiff was entitled to gas mileage reimbursement for gas that she used driving her personal vehicle to the scale houses. After cleaning the scale houses for a month, Plaintiff asked Davis for a mileage reimbursement form. Davis said that she did not have any forms and subsequently told Plaintiff that she could not reimburse Plaintiff because one of her co-workers had already received the reimbursement.

Plaintiff protested and Davis became confrontational. Plaintiff was never reimbursed for gas mileage.

Plaintiff became depressed and worried about being fired from or quitting her job. Davis called a meeting in July 2012 to discuss tardiness. When Plaintiff raised her hand to speak, one of Plaintiff's crew members, Franklin Enyard ("Enyard") jumped out of his seat and began yelling profanities at her, and Davis told Plaintiff to put her hand down because she didn't "want to hear it." [1] at 26.

Davis continued to harass Plaintiff into the fall of 2013. In November 2013, Plaintiff filed a grievance with Defendant. She complained that Davis was assigning her the work of her co-workers, was denied light duty while pregnant, and was disciplined inappropriately and treated rudely because of her gender. Defendant responded in January 2014 that there was no evidence that Davis' actions violated applicable administrative procedures. Davis continued to harass Plaintiff.

On April 28, 2014, Plaintiff and Enyard had an altercation at the plant after Plaintiff asked to use Enyard's cart. Enyard yelled profanities at Plaintiff, spit in her face, and threatened to kill her. Plaintiff called police, but they never showed up, and plant supervisors ignored her requests for help. The next day, Plaintiff filed a report with plant security.

The day after that, Plaintiff was informed that she was being promoted and on May 5, 2014, she began work at a different plant, in Egan. Davis called Plaintiff on the phone and told her that she "would not get away while she [Davis] was gone" from work at the Calumet plant. [1] at 33. On May 8, 2014, Plaintiff was informed that she was being demoted and had to return to work at the Calumet plant the following day.

On May 9, 2014, Plaintiff went to the EEOC office rather than work. Plaintiff was told that the EEOC would not take her case because her complaints were against another woman, Davis. The next day, Plaintiff spoke on the phone with an EEOC intake supervisor, who scheduled a phone interview with Plaintiff.

Plaintiff returned to work at the Calumet plant. On May 30, 2014, Plaintiff was vacuuming the rug outside of Davis' office. Enyard entered the office and mumbled an obscenity at Plaintiff. Plaintiff ran out of the office screaming for help and called the police, who came and took a report. After the police left, Davis assigned Plaintiff Enyard's work area and half of the work area of another team member, and threatened Plaintiff to do as she said.

On June 3, 2014, Plaintiff was told to report to Defendant's Kirie plant for work the next day. Plaintiff's supervisor at the Kirie plant, Michael Shukin, told Plaintiff that Davis had nothing good to say about her. In August 2014, Plaintiff received an unwarranted write-up concerning her behavior at work on two occasions. Shukin began to assign Plaintiff work at which she could injure herself. In September 2014, Plaintiff was assigned to clean weeds out of a tank. Plaintiff and the other workers assigned to this task did not receive any training or appropriate safety equipment. One of the other workers nearly fell into a drainage hole in the tank.

Plaintiff applied for a transfer to another plant because she feared getting hurt at the Kirie plant. In June 2015 she was transferred to Defendant's Stickney plant. The Stickney plant's treatment plant operator, Ramone Adams ("Adams"), refused to give Plaintiff any personal protection equipment. Plaintiff saw a piece of paper on Adams' work station with her name at the top, with "4 children, and sexual harassment" written below it. [1] at 42. At the Stickney plant, Plaintiff was "rotated like a floater," unlike other employees who were assigned to the

5

same work area nearly every day. *Id*. According to Plaintiff, her work assignments were not fair and her supervisors wrote her up without good cause.

In her complaint, Plaintiff states that she filed charges of discrimination with the EEOC on May 9, 2014 and with the Illinois Department of Human Rights ("IDHR") on May 16, 2014. The attached IDHR charge, [1] at 8, alleges claims for sex discrimination and retaliation. Plaintiff reported in the charge that she was harassed, sexually harassed, threatened, and assaulted, and demoted in May 2014 after she complained. Plaintiff does not attach a separate EEOC charge to her complaint; presumably, the same charge was filed with both agencies. The EEOC dismissed Plaintiff's charge and issued a notice of right to sue on June 10, 2015. [1] at 7.

Plaintiff alleges that Defendant violated Title VII by discriminating against her based on her color, sex, and pregnancy and by failing to stop harassment against her. The facts she alleges to support those claims are that she was denied lighter duty while pregnant, demoted after complaining about harassment, denied gas mileage reimbursement, and harassed sexually and verbally.

## II. Analysis

### A. Dismissal for Failure to Prosecute [20]

Defendant argues that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 41(b) because Plaintiff did not attend the May 10, 2016 hearing [19] on its motion to dismiss for failure to state a claim [15] or file a response to that motion. Plaintiff also failed to appear at the August 11, 2016 hearing [22] on Plaintiff's motion to dismiss for failure to prosecute [20]. On December 22, 2016, the Court ordered Plaintiff to appear for a status hearing on January 5, 2017, or to file a written statement, to explain whether she intends to proceed with this lawsuit. Plaintiff failed to appear at the scheduled time on January 5, 2017, but appeared

6

after the court call and informed the Courtroom Deputy that she intended to proceed with her lawsuit. Plaintiff also sent a letter to the Court requesting a new hearing date. See [24].

The Court denies Defendant's motion to dismiss for failure to prosecute [20]. The Court has discretion under Federal Rule of Civil Procedure 41(b) to dismiss a case where the plaintiff fails to prosecute or to comply with the Federal Rules or a court order. Here, Plaintiff failed to respond by June 21, 2016 to Defendant's motion to dismiss for failure to state a claim, and also missed two hearings scheduled by the Court. Nonetheless, the Court will exercise leniency in favor of Plaintiff—who is acting *pro se*—in light of her representation that she wishes to continue with her lawsuit. The Court advises Plaintiff that she is required to attend hearings scheduled by the Court and to comply with deadlines set by the Court, and that her failure to do so in the future may result in her case being dismissed for failure to prosecute.

### B. Dismissal for Failure to Timely Serve Complaint [15]

Defendant also moves to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(5) based on Plaintiff's failure to serve the complaint on Defendant within 120 days of filing the complaint. Instead, Defendant received the complaint on March 8, 2016, which was 22 days too late.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed"—or 120 days, under the version of the rule in effect when Plaintiff filed her complaint—the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "If the plaintiff cannot show good cause, then the decision to grant an extension is

7

left to the discretion of the district court." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

In this case, the Court declines to dismiss the complaint for failure to comply with Rule 4(m). The Court affords Plaintiff some leniency due to her *pro se* status and apparent failure to understand the Court's rules regarding service, even though Plaintiff made no attempt to show good cause. The Court also finds that it is unnecessary to order Plaintiff to serve the complaint within a specified time, because Defendant acknowledges that is has now been served with the complaint. See [16] at 3.

### C. Dismissal for Failure to State a Claim [15]

The Court now turns to Defendant's argument that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Defendant argues that Plaintiff's claims for Title VII discrimination based on color and pregnancy, and her allegations that she was denied light duty and mileage reimbursement, were not raised in her EEOC charge and are not like or reasonably related to the allegations of her EEOC charge. Therefore, Defendant maintains, Plaintiff is not entitled to pursue a Title VII action based on these claims and allegations.

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. For purposes of a motion to dismiss under Rule 12(b)(6), "the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496

F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

As a precondition to filing claims under Title VII, Plaintiff was required to file a charge with the EEOC. *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015). The purpose of this requirement is to give "the EEOC and the employer a chance to settle the dispute," and "the employer notice of the employee's grievances." *Id.* The Court "review[s] the scope of an EEOC charge liberally," in light of the fact that most charges are "drafted by laypersons rather than lawyers." *Id.* A Title VII plaintiff is not required to "include in her charge every fact that, individually or in combination, forms the basis of a subsequent lawsuit's claims." *Id.* Instead, "[t]o be cognizable in federal court, a Title VII claim must simply be like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* This "liberal" standard is satisfied "if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009). At a minimum, the charge and the complaint should "describe the same conduct" and "implicate the same individuals." *Huri*, 804 F.3d at 831-32.

Applying these standards, the Court concludes that Plaintiff cannot state a claim for discrimination based on color, because that claim was not raised in her EEOC charge and is not like or reasonably related to the allegations in that charge. There is nothing in Plaintiff's EEOC charge, complaint, or exhibits to the complaint that make any mention of color. See [1] at 8-18.[2]

The Court now turns to Plaintiff's claim for discrimination based on gender. Defendant

---

[2] To the extent that Plaintiff also intends to assert a claim for discrimination based on color in violation of 42 U.S.C. § 1981, which is not clear from her complaint, that claim is also dismissed due to Plaintiff's failure to allege any facts indicating that she was discriminated against on the basis of color.

does not seek to dismiss the gender discrimination claim to the extent that it is based on allegations that Plaintiff was sexually and verbally harassed, that Defendant failed to stop the harassment, and that Plaintiff was demoted after complaining about the harassment. As Defendant essentially concedes, these allegations are found in Plaintiff's EEOC charge, in which Plaintiff complains that she was "discriminated against because of [her] sex, female, and in retaliation for engaging in protected activity," by being "subjected to different terms and conditions of employment, . . . include[ing], but . . . not limited to, being harassed, sexually harassed, threatened and assaulted" and by being "demoted in or around May 2014." [1] at 8. Therefore, at least these parts of Plaintiff's gender discrimination claim remain viable and will not be dismissed.

The final question is whether Plaintiff's claim of pregnancy discrimination and allegations that she was denied light duty and mileage reimbursement were raised in the EEOC charge, or are like or reasonably related to the allegations of the EEOC charge.

One of the complaint information sheets attached to the EEOC charge asserts that Plaintiff filed a "discrimination/harassment charge" against Davis on November 1, 2013. [1] at 17. The EEOC charge and Plaintiff's complaint therefore implicate the same individual, Davis. See *Cheek*, 31 F.3d at 500. Whether they both describe the same conduct is a closer question, which Defendant does not specifically address in its motion to dismiss.

The complaint information sheet only vaguely asserts that Davis engaged in some type of discrimination or harassment against Plaintiff. But it also refers to a grievance that Plaintiff filed against Davis in November 2013, and courts in this circuit have looked beyond the four corners of the EEOC charge form when "the charging party incorporated the outside allegations into the charge itself by referencing those statements or documents in the charge." *Shamim v. Siemens*

*Indus., Inc.*, 854 F. Supp. 2d 496, 506–07 (N.D. Ill. 2012). According to the complaint, the November 2013 grievance referred to in the charge's information sheet complained that Davis assigned her the work of her co-workers, denied her light duty while pregnant, denied her requests for mileage reimbursement, disciplined her inappropriately, and treated her rudely because of her gender. See [1] at 30. Assuming the grievance contains these allegations, which the Court must for purposes of the motion to dismiss, it is plausible that the EEOC charge and Plaintiff's complaint "describe the same [relevant] conduct," *i.e.*, Davis' discrimination against Plaintiff due to her pregnancy and denial of light duty and mileage reimbursement. *Huri*, 804 F.3d at 831-32. Plaintiff's reference to the grievance in her EEOC charge serves one of the primary purposes of the EEOC exhaustion requirement, which is to put the employer on notice of the employee grievances on which the EEOC charge is based. *Id.* at 831. Further, given the alleged contents of Plaintiff's underlying grievance, the Court finds it plausible that the allegations in Plaintiff's complaint could reasonably have been "expected to be discovered in the course of the EEOC's investigation," even if each supporting fact was not laid out in detail in the charge. *Teal*, 559 F.3d at 692.

For these reasons, the Court concludes that Plaintiff's Title VII claim is subject to dismissal under Rule 12(b)(6) only to the extent that it alleges that Plaintiff was discriminated against based on color.

## IV. Conclusion

For the reasons explained above, Defendant's motion to dismiss the complaint for lack of prosecution [20] is denied and Defendant's motion to dismiss for failure to state a claim [15] is granted in part and denied in part. Plaintiff's claims for discrimination based on color under Title VII and 42 U.S.C. § 1981 are dismissed. Plaintiff's remaining claims, including those for

11

gender discrimination, remain in the case.  This matter is set for status hearing on February 7, 2017 at 9:00 a.m.  The parties should come prepared to discuss deadlines for completing discovery.

Dated: January 26, 2017

_____
Robert M. Dow, Jr.
United States District Judge